# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 07-0152-06 (ESH)** |
| | ) | |
| **HELERY PRICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Before the Court is defendant Helery Price's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1).  (*See* Def.'s Mot., ECF No. 448.)  He seeks a sentence reduction to time served based on "extraordinary and compelling reasons."  *Id*. § 3582(c)(1)(A)(i).  For the reasons stated herein, the motion will be granted.

## BACKGROUND

In 2008, after a jury trial, Mr. Price was convicted of a single count of conspiracy to possess with intent to distribute and to distribute one kilogram or more of phencyclidine ("PCP"), in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(iv), 851.  (Judgment, Aug. 11, 2008, ECF No. 277.)  At the time he was sentenced, due to two prior drug convictions, he was sentenced to the statutory mandatory minimum of life imprisonment and 10 years of supervised release.  (*Id*.)  As discussed *infra*, due to amendments in the relevant statutes, Mr. Price's statutory mandatory minimum if he were being sentenced today would be 15 years.  If he were serving a 15-year sentence, the Bureau of Prisons calculates that, with good time credits, Mr. Price would have been released in March 2020.

Mr. Price is currently incarcerated at USP Lewisburg.  On August 13, 2020, he sent a letter to the warden there, asking that he be considered for compassionate release pursuant to § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic, his personal characteristics that increase his risk should he contract the virus (57 years old, African American, and male), the fact that he is serving a life sentence for a non-violent drug offense that would not apply today given the recent changes to criminal sentencing laws made by the First Step Act of 2018, and the unwarranted sentencing disparities between Mr. Price and his more culpable co-conspirators. (*See* Def.'s Mot. at 1 & attachment thereto.)  Mr. Price's request was denied that same day.  (*Id.*).

Mr. Price filed the pending motion for compassionate release on August 31, 2020, and a supplement thereto on September 6, 2020 (ECF No. 449).  The government filed an opposition on September 8, 2020 (ECF No. 452), and Mr. Price filed a reply on September 11, 2020 (ECF No. 453), and a second supplement on September 27, 2020 (ECF No. 454).

## ANALYSIS

Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  As amended by the First Step Act of 2018, § 3582(c)(1) provides that:

> The court may not modify a term of imprisonment once it has been imposed except that . . .
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. 3582(c)(1).

Prior to the First Step Act, motions for compassionate release could only be brought by the Director of the Bureau of Prisons ("BOP").  See Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) ("Increasing the Use and Transparency of Compassionate Release").  Because the Sentencing Commission's applicable policy statement was issued before the passage of the First Step Act, it only contemplates motions filed by the Bureau of Prisons, not by defendants.[1]  In relevant part, it provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.  In Application Note 1, the Commission identifies four types of circumstances that may qualify as extraordinary and compelling: (A) the defendant's medical condition; (B) the defendant's age, if combined with deteriorating physical or mental health and a minimum amount of time served; (C) certain family circumstances; and (D) "other reasons—as determined by the Director of the Bureau of Prisons" independent of or in combination with the reasons listed in subsections (A) to (C).  *See* U.S.S.G. § 1B.13 appl. n.1(A)–(D).

The government opposes defendant's motion, arguing that (1) he has failed to satisfy the statutory exhaustion requirement; (2) his reasons for seeking a sentence reduction are not

---

[1] The Sentencing Commission has lacked a quorum since the passage of the First Step Act and thus has been unable to enact any amendments to the Sentencing Guidelines.

"extraordinary and compelling"; and (3) even if he had presented extraordinary and compelling reasons, he should not be released based on a consideration of the § 3553(a) factors and because his release would pose a danger to the community. Each argument will be addressed in turn.

## I.    EXHAUSTION

Section 3582(c) allows a defendant to bring a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c). The parties dispute the meaning of this provision. Defendant argues that his motion is properly before the Court because more than 30 days have passed since August 12, 2020, when he submitted his request to the warden of USP Lewisburg. The government argues that because the warden denied defendant's request, as opposed to not responding to it, the 30-day waiting period does not apply and defendant cannot satisfy the exhaustion requirement until all administrative appeals have been exhausted. (*See* Gov't Opp. at 12 ("Courts have interpreted the First Step Act to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days.").) The government's proposed interpretation is contrary to the plain language of the statute, which provides that a defendant can either exhaust administrative appeals *or* wait 30 days. *See, e.g.*, *United States v. Franco*, 2020 WL 5249369 at *1-2, No.20-60473 (5th Cir. Sept. 3, 2020); *United States v. Algur*, 960 F.3d 831, 833-34 (6th Cir. 2020). Indeed, such an interpretation would undermine the First Step Act's goal of expanding the use of compassionate release by removing the BOP as a gatekeeper to judicial consideration of sentence reduction motions. Accordingly, because more than 30 days have passed since defendant submitted his request to the warden of his facility, Mr. Price satisfies this first requirement for compassionate release.

## II.    EXTRAORDINARY AND COMPELLING REASONS

Mr. Price argues that extraordinary and compelling reasons exist to reduce his sentence because (1) changes in sentencing law mean that he is serving a mandatory life sentence while a similarly-situated defendant sentenced today would face only a 15-year mandatory minimum; (2) his life sentence far exceeds the sentences of more culpable co-conspirators; and (3) the injustice of his situation is exacerbated by the ongoing COVID-19 pandemic, which he is at greater risk of contracting while in prison and which, because he is an older, black, male, who has health issues, is more likely to cause him serious illness or death.

Before deciding whether these circumstances constitute extraordinary and compelling reasons under § 3582(c), the Court must address a legal question: whether the fact that Section 3582(c) requires that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" means that a court is limited to the specific reasons set forth in U.S.S.G. § 1B1.13, none of which apply to Mr. Price, or whether it has the discretion to decide that a reason is extraordinary and compelling even if it is not a reason that falls within the Sentencing Commission's policy statement.  Because this policy statement predates the First Step Act's substantial changes to the compassionate release process, which were designed to expand the use of compassionate release and remove the BOP as the exclusive gatekeeper of the process, a number of district courts, as well as one court of appeals, have concluded that the policy statement no longer binds district courts. *See United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *5 (2d Cir. Sept. 25, 2020) ("First Step Act empowered district courts evaluating motions for compassionate release to consider *any* extraordinary and compelling reason for release that a defendant might raise"); *United States v. Quinn*, No. 91-cr-00608, 2020 WL 3275736, at *5 (N.D. Cal. June 17, 2020) ("Sentencing Commission's policy statement no longer binds district courts after the First Step Act; instead, courts are free to determine whether

any extraordinary and compelling reasons other than those delineated in [the Sentencing Guidelines policy statement] warrant compassionate release." (internal quotation marks omitted)).[2] While there is a split of authority,[3] this Court finds the many opinions that endorse an expansive reading of a sentencing court's power, given the changes instituted by the First Step Act and the fact that the policy statement has not been amended since its enactment, to be more persuasive. *See, e.g.*, *United States v. Duncan*, No. 3:11-cr-00012, 2020 WL 4669944 at *5 (M.D. Tenn. Aug. 12, 2020 (summarizing cases that set forth multiple reasons for concluding that "factors tip the scale in favor of the conclusion that a court can look at 'other reasons' when considering 'extraordinary and compelling' reasons under the First Step Act").

Having concluded that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," *Brooker*, 2020 WL 5739712, at *7, the question remains whether the extraordinary and compelling reasons cited by Mr. Price warrant compassionate release. The Court concludes they do.

First, from the outset, this Court was deeply disturbed by having to impose a statutory mandatory minimum sentence of life imprisonment. His prior two non-violent drug convictions

---

[2] *See also United States v. Duncan*, No. 3:11-cr-0012, 2020 WL 4669944, at *5 (M.D. Tenn. Aug. 12, 2020); *United States v. Day*, No. 1:05-cr-460, 2020 WL 4251803, at *11, No. 1:05-cr-460 (E.D. Va. July 23, 2020); *Bellamy v. United States*, No. 2:03-cr-197, 2020 WL 4208446, at *6 (E.D. Va. July 22, 2020); *United States v. Arey*, No. 5:05-cr-0029, 2020 WL 2464796, at *3 (W.D. Va. May 13, 2020); *United States v. Haynes*, No. 93-cr-1043, 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020);*United States v. Marks*, No. 03-cr-6033, 2020 WL 1908911, at *5 (W.D.N.Y. Apr. 20, 2020); *United States v. Decator*, 452 F. Supp, 3d 320, 324 (D. Md. 2020); *United States v. Redd*, 444 F. Supp. 3d 717, 726-27 (E.D. Va. 2020); *United States v. Young*, No. 2:00-cr-0002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681-82 (N.D. Cal. 2019); *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019).

[3] *See, e.g.*, *United States v. Fox*, No. 2:14-cr-03, 2019 WL 3046086, at *2 (D. Me. July 11, 2019).

hardly merited a life sentence. The first conviction was a then-20-year old conviction from 1988, when he was 25 years old, in the Superior Court for the District of Columbia. It involved a minimal amount of drugs, and although he was sentenced to 20 months to 5 years, the execution of the sentence was suspended and he was placed on three years of probation. The second conviction was in federal court in 1994, when Mr. Price was 30. The amount of drugs was still relatively small, 18.3 grams of heroin, but he was sentenced to 10 years. At sentencing, the Court observed that a sentence of life imprisonment was excessive for a defendant convicted of a non-violent drug offense who had two prior drug convictions:

> I think that the drug laws in this regard are completely draconian. I will say for the Court of Appeals I would not impose a life sentence merely because of your prior record. That's what's driving it. . . . But this is not, this particular offense is not a crime of violence meriting life. People who commit murder and such heinous crimes as that deserve life, but I have no choice whatsoever under 841 but to impose a life sentence.

(Sent. Hr'g Tr. at 36, Aug. 7, 2008.)

Congress has now recognized that the sentencing scheme in place in 2008 was, in this Court's words, "draconian," such that today a defendant similarly-situated to Mr. Price would face only a 15-year mandatory minimum. (*See* Supp. Mot. at 1-2 (explaining why due to amendments to the drug sentencing laws, the 1988 conviction would no longer count and the mandatory minimum sentence for one prior drug conviction is now 15 years).) But those changes to the law have not been made retroactive. Nonetheless, this situation, as a number of courts have recognized, can present an extraordinary and compelling reason to reduce a defendant's sentence, even in the absence of serious health issues. *See, e.g.*, *United States v. Arey* No. 5:05-cr-0029, 2020 WL 2464796, at *3 (W.D. Va. May 13, 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a dramatically lower sentence than the one he is currently serving constituted an 'extraordinary

and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)."); *United States v. Day*, No. 1:05-cr-460, 2020 WL 4251803, at *12 (E.D. Va. July 23, 2020) (finding extraordinary and compelling reasons where "were Defendant sentenced today, his sentence with respect to Count 1 would be dramatically different.  Instead of a mandatory Life sentence (predicated on two qualifying § 851 offenses), Defendant would today face a mandatory minimum sentence of 15 years (predicated on a single qualifying § 851 offense), with a substantially lower than Life Guidelines sentence."); *see also United States v. Quinn*, 2020 WL 3275736, at *4 ("enormous sentencing disparity created by subsequent changes to federal sentencing law . . . constitutes an 'extraordinary and compelling reason' for . . . compassionate release"); *Bellamy v. United States*, No. 2:03-cr-197, 2020 WL 4208446, at *6 (E.D. Va. July 22, 2020) (considering "the disparity between individuals sentenced before and after the passage of the FIRST STEP Act"); *United States v. Urkevich*, No. 8:03-cr-37, 2019 WL 6037391, at *8 (D. Neb. Nov. 14, 2019) ("A reduction ... is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed."); United States v. *Maumau*, No. 2:08-cr-0758, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) ("[T]he changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief on the facts present here.").

In addition to the sentencing disparity created by the First Step Act, there are stark and unwarranted sentencing disparities between Mr. Price's life sentence and the sentences of his more culpable co-conspirators: Lonnell Glover, Anthony Suggs, and Ernest Glover.

Lonnell Glover was the kingpin in this drug conspiracy.  He was tried separately, convicted, and sentenced to life imprisonment.  *See* Judgment, *United States v. Lonnell Glover*, No. 07-cr-153 (D.D.C. Aug. 6, 2010).  He was also separately charged and convicted of

conspiracy to distribute five kilograms or more of cocaine, for which he received a sentence of 240 months imprisonment.  *See* Judgment, *United States v. Lonnell Glover*, No. 09-cr-129 (D.D.C. June 24, 2010).  However, both convictions were overturned on appeal because the Court of Appeals found that the bug on his truck was unlawful.  *See United States v. Lonnell Glover*, 736 F.3d 509 (D.C. Cir. 2013).  On remand, despite Lonnell Glover's substantial criminal history, including several crimes of violence, and his leadership role in two different drug distribution rings, the government agreed to an 11(c)(1)(C) plea, pursuant to which the cocaine conspiracy charges were dismissed and he was sentenced to 21 years for the PCP drug conspiracy.  He now has a projected release date in 2025.

Anthony Suggs was supplied by Lonnell Glover, and he then distributed to Ernest Glover, Mr. Price and others.  Anthony Suggs was tried with Ernest Glover and Mr. Price.  He was convicted of one count of conspiracy and also one substantive count of distribution.  He had one prior conviction for distribution of 5 grams or more of cocaine, for which he had been sentenced to 87 months.  Based on that prior conviction, his statutory mandatory sentence was 240 months, which the Court imposed.  The Court noted at the time that Mr. Suggs was "far more culpable" than either Ernest Glover or Mr. Price, who were subject to mandatory life sentences.  (Sent. Hr'g Tr. at 27 ("[n]ot that Mr. Suggs isn't far more culpable than the other people who because of a statute I'm going to end up sentencing for much longer, that doesn't seem to make sense one bit to me").  However, because the Court also considered the mandatory minimum sentence of 20 years for Anthony Suggs to be excessive (Sent. Hr'g Tr. at 27), there was no fair way to mitigate the sentencing disparity.  The disparity is now even greater because after serving a little over 13 years (approximately 77% of his sentence based on his projected release date), Mr. Suggs was granted compassionate release due to his medical conditions and

the COVID-19 pandemic and this Court's determination that none of the goals of sentencing required his continued incarceration.  *See United States v. Suggs*, No. 07-cr-0152-01, 2020 WL 5816485, at *1-3 (D.D.C. Sept. 29, 2020).

Ernest Glover was supplied by Anthony Suggs, and he then sold to various street level dealers.  Like Mr. Price, Ernest Glover was convicted of one count of conspiracy and, because he also had two prior convictions,[4] sentenced to mandatory life imprisonment.  Unlike Mr. Price, though, Ernest Glover was in possession of eight ounces of PCP, scales, packaging vials, and three shotguns, along with ammunition, at the time of his arrest.  In 2017, due to a grant of executive clemency, Ernest Glover's sentence was reduced to 240 months, creating an inexplicable disparity between him and Mr. Price.  This disparity is now even greater because after serving almost 12 years (approximately 70% of his sentence based on his projected release date), Ernest Glover was granted compassionate release due to his medical conditions and the COVID-19 pandemic and this Court's determination that none of the goals of sentencing required his continued incarceration.  *See United States v. Glover*, No. 07-cr-00152-04, 2020 WL 4923635, at *1-4 (D.D.C. Aug. 21, 2020).

Thus, as it now stands, both Anthony Suggs and Ernest Glover have been released from prison and Lonnell Glover is due to be released in 2025, while Mr. Price is still serving a life sentence.  These unwarranted sentencing disparities provide a further compelling reason to reduce Mr. Price's sentence.

Finally, Mr. Price is a 57-year-old African-American man with some health issues, and, as such, he is at greater risk from the COVID-19 pandemic than a younger and healthier inmate.

---

[4] Like Mr. Price, Ernest Glover had two prior convictions for drug distribution: one in Superior Court that resulted in a sentence of three years probation; and one in federal court that resulted in a 108-month sentence of imprisonment.

While the there are no current active cases at Lewisburg, there have been 84 cases in the past and the potential for another breakout is always present.

Given all of the above, the Court finds that there are extraordinary and compelling reasons to reduce Mr. Price's sentence of life imprisonment.

## III.   § 3553(A) FACTORS

Section 3553(a) provides that in determining an appropriate sentence, a court must take into account "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as, *inter alia*, afford adequate deterrence, provide just punishment, and protect the public. *See id.* § 3553(a)(1)-(2).  Moreover, a sentence must be "sufficient, but not greater than necessary," to promote these goals. *See id.* § 3553(a).  Having considered the § 3553(a) factors, the Court concludes that a sentence reduction to time served is warranted.

The government argues that the § 3553(a) factors weigh against a sentence reduction because Mr. Price has not shown that he "is not a danger to the safety of any other person or to the community."  (Gov't Opp. at 16 (quoting U.S.S.G. § 1B1.13(2)).)  The only facts the government relies on to support its view are that defendant "received a life sentence for his role in a serious crime"; he had several prior convictions and arrests before his conviction in this case; and he is serving his sentence in a "medium" security prison.  (Gov't Opp. at 16.)  As Judge Contreras recently pointed out, if the Court were to agree that these facts, without more, were sufficient to demonstrate that a defendant would pose a "danger to public safety," "very few, if any, defendants who have served lengthy sentences would be able to take advantage of the First Step Act ... a result [that] appears contrary to the purpose of the First Step Act amendments." *See United States v. Brown*, No. 92-cr-0345, slip op. at 12 (D.D.C. July 2, 2020), ECF No. 93.  Rather, the Court must consider the entire record, and based on this record, the Court concludes that Mr. Price does not pose a danger to the community.  First, even though Mr.

Price was convicted of conspiracy to possess with intent to distribute and to distribute phencyclidine, he did not engage in any violent conduct. Indeed, the only evidence tying Mr. Price to the drug conspiracy that led to his conviction were references made by his co-conspirators in wiretapped conversations. In addition, the last of Mr. Price's prior convictions dates back to 1993, more than 27 years ago, and according to his current inmate profile his recidivism risk level is "low." (*See* Gov't Ex. C, ECF No. 452-3.) Moreover, although he is housed in a medium security facility, the government acknowledges that his prison record does not include any history of violent infractions. Finally, as previously discussed, the life sentence that Mr. Price is serving was required by statute, based on the offense of convictions and his prior convictions; it did not reflect this Court's judgment that Mr. Price posed a danger to the public. Indeed, as the Court expressed at the time, it considered the life sentence to be completely out of proportion to Mr. Price's culpability, and it would never have imposed that sentence had it not been required to do so.

For the same reasons, the Court finds that none of the purposes of sentencing would be served by continuing to incarcerate Mr. Price. He is now 57 years old. He has been incarcerated since 2007, so he has already served over 13 years. Had current law been in effect at the time he was sentenced in 2008, he would have faced a 15-year mandatory minimum sentence. In all likelihood, that is the sentence the Court would have imposed as the underlying criminal conduct, while serious, did not involve any firearms or allegations of violence. With good time credits, he would already have been released. The unusual nature of this case and unjustified disparities in sentencing have already been addressed. The two co-defendants who were convicted at the same trial were both more culpable than Mr. Price, yet both have already been released. In addition, Mr. Price has had minimal disciplinary issues over the 13 years he has

been in prison, and he has completed a number of programs, including an 1,120 hour electrical apprentice program and 40-hour and 500-hour substance abuse programs.  Finally, Mr. Price plans to reside with a family member, and his release plan has been reviewed and approved by the United States Probation Office.

Taking all the above into consideration, the Court does not agree that additional time in prison is necessary to achieve any of the goals of sentencing.

CONCLUSION

For the reasons stated above, the Court finds that extraordinary and compelling reasons warrant a sentence reduction.  Accordingly, the Court will grant defendant's motion for compassionate release and reduce his previously imposed sentence of life imprisonment to time served.  In addition, the Court will modify the conditions of supervised release to include a three-month period of home detention, with location monitoring at the discretion of the Probation Office.  A separate Order accompanies this Memorandum Opinion.



ELLEN S. HUVELLE
United States District Judge

Date:  October 6, 2020